UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA TODD HALE, | ) | CASE NO.: 1:25-cv-00064 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Magistrate Judge Jennifer Dowdell Armstrong's Report and Recommendation ("R&R") recommending the Commissioner of Social Security's decision be affirmed. (Doc. 11.) Plaintiff Joshua Todd Hale ("Hale") timely filed objections (Doc. 12), and Defendant Commissioner of Social Security ("Defendant") responded. (Doc. 13.)

For the following reasons, Hale's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the Commissioner's final decision is AFFIRMED.

**I.      BACKGROUND**

**A.      Joshua Todd Hale's Medical History**

Hale does not object to the factual record and procedural history in the R&R. (*See* Doc. 12 at 1012.)[1] Notwithstanding, the Court summarizes the facts pertinent to Hale's objections.

Hale's medical history includes treatment for both physical and mental conditions. (Doc. 11 at 993; *see generally* Doc. 6.) The records primarily relate to his physical conditions. (Doc.

---

[1] For ease and consistency, briefing citations reflect the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

11 at 993.) However, Hale's brief on the merits only related to non-exertional limitations stemming from mental health conditions. (*Id.*) For this reason, the R&R focused on the mental health records, but noted the physical records were reviewed and considered as well. (*Id.* at 988 n.3.) Hale did not object to this summation. (*See generally* Doc. 12.) In similar fashion, because Hale's objections to the R&R focus on his mental conditions, the Court discusses the relevant mental health records below but notes it has reviewed Hale's entire medical history.

On May 20, 2019, Hale first underwent psychiatric assessment with nurse practitioner Kelly Geyer. (Doc. 6 at 942.) He sought treatment for anxiety, depression, ADHD, and alcohol dependence. (*Id.* at 944.) Hale reported panic and anxiety attacks, racing heart rate, feeling overwhelmed, being "fidgety" in social situations, disorganized, lack of focus, sadness, and procrastination. (*Id.* at 942.) Geyer noted Hale was well-groomed, had clear speech, average eye contract, and was alert and oriented with no cognitive impairment. (*Id.*) She reported Hale had poor oral hygiene. (*Id.*) Geyer prescribed medications for depression, anxiety, and ADHD. (*Id.* at 943.)

On June 18, 2019, Hale followed up with Geyer. (*Id.* at 726.) He reported the prescribed medication helped manage his anxiety and depression but felt that they could be increased. (*Id.*) Hale ceased taking one medication, hydroxyzine, because it caused excessive drowsiness. (*Id.*) He still had difficulty completing tasks, particularly if it requires organization. (*Id.*) He reported his ADHD medication was helpful for inattention symptoms. (*Id.*) Geyer noted Hale's mood was euthymic with full affect, had clear speech and logical thought process, and was alert and oriented. (*Id.* at 728.) Geyer increased Hale's prescriptions. (*Id.*)

At a follow-up appointment on July 16, 2019, Hale reporting he was "doing better with anxiety with increased dose" of his medications. (*Id.* at 731.) Hale also confirmed his ADHD

medication was working but tended to wear off in the afternoon. (*Id.*) Geyer increased his ADHD medications to address this issue. (*Id.*) Hale also reported intermittent restlessness, for which Geyer re-prescribed him hydroxyzine. (*Id.*)

Hale saw Geyer at follow-up appointments in August 2019, September 2019, October 2019, January 2020, February 2020. (*Id.* at 737-68.) At these appointments, Hale reported that he was "doing well" and his mental health seemed to be consistent. (*Id.*) During his February 2020 appointment, Hale appeared "somewhat anxious." (*Id.* at 761.) Geyer removed Hale's antidepressant medication (*id.* at 761) but recontinued the medication a month later (*id.* at 766).

Hale's mental health remained the same in April and May 2020. (*Id.* at 771-76.) Due to the pandemic quarantine, Hale reported increased depression during his June 2020 appointment. (*Id.* at 399.) Geyer recommended Hale participate in counseling, but he declined. (*Id.* at 401.) Geyer increased his antidepressant medication. (*Id.*) The next month, Hale reported the increase in his medication helped. (*Id.* at 786.) He also reported he began working. (*Id.*) Hale remained in similar condition throughout the rest of 2020, which continued through May 2021. (*Id.* at 791, 796, 801, 811, 816, 821, 823, 826, 831, 838.) In May, Hale reported he was looking forward to returning to work. (*Id.* at 841.) He missed his appointment in June and July 2021 because he was working but reported stable symptoms in August 2021. (*Id.* at 846-48.) Hale remained much the same throughout the rest of the year. (*Id.* at 851, 856, 861, 866.) Things changed in January 2022 when Hale's mother tragically passed away. (*Id.* at 873.) During his January appointment, Hale reported feeling "overwhelmed" but otherwise indicated he was "doing okay" given the circumstances. (*Id.*) Hale reported the same feelings in February 2022 as he continued to grieve the loss of his mother. (*Id.* at 878.)

In April 2022, Hale underwent a psychiatric evaluation with Angela Ciroli as part of a transfer to her care.  (*Id.* at 946.)  During the appointment, Hale had normal demeanor, eye contact, speech, and psychomotor activity.  (*Id.* at 946.)  However, Ciroli noted Hale was anxious and his "affect is constricted."  (*Id.* at 947.)  Hale reported he always had social anxiety and could not work because of his physical conditions.  (*Id.* at 947-48.)  He reported weight loss since his mother's passing.  (*Id.*)  At his next appointment in May 2022, Hale reported trouble sleeping, racing thoughts, and irritability.  (*Id.* at 883.)  He reported difficulty with finances which has led to panic attacks and additional stress.  (*Id.*)  Ciroli made a medication change.  (*Id.*)  Hale reported stable symptoms in June 2022, but noted he had low motivation and was dealing with stress due to food insecurity.  (*Id.* at 887-89.)  In August, Hale presented with poor hygiene and reported he was struggling with focus and increased depression.  (*Id.* at 892.)  Ciroli encouraged Hale to attend counseling, but he declined.  (*Id.*)  Ciroli again made medication changes.  (*Id.*)

The medication changes had their intended effect.  In September 2022, Hale reported he was "doing alright" and was less anxious and stabilized his mood.  (*Id.* at 897.)  He stated he was looking for employment.  (*Id.* at 899.)  Hale was much the same in October.  (*Id.* at 902-04.)  At the appointment, Ciroli made medication changes.  (*Id.*)  In November, Hale was doing much better and stated he was "finally feeling good" and presented with a "brighter affect."  (*Id.* at 907-09.)  While worried about the Christmas holiday, Hale noted at his December 29, 2022 appointment he got through it "okay so far" and was doing "very well."  (*Id.* at 912-14.)  From this time through September 2023, Hale reported stable symptoms.  (*Id.* at 917, 922, 927, 932, 937.)  He reported he was working part time in April 2023.  (*Id.* at 922-24.)  In September 2023, Ciroli suggested weaning Hale off some of his medications.  (*Id.* at 939.)

**B.     Opinion Evidence and State Agency Review**

On November 26, 2022, Dr. Deryck Richardson reviewed Hale's claim at the initial review level.  (*Id.* at 127.)  Dr. Richardson assessed the following moderate limitations: ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  (*Id.* at 131.)  With respect to Hale's mental residual functional capacity, Dr. Richardson found no limitations regarding Hale's ability to remember locations and work-like procedures, but Dr. Richardson assessed Hale had a moderate limitation to carry out detailed instructions.  (*Id.* at 135.)  Hale could, in Dr. Richardson opinion, carry out very short and simple instructions without significant limitations.  (*Id.*)  Dr. Richardson wrote Hale "maintains the ability to understand and remember simple and routine tasks."  (*Id.*)  Dr. Richardson also found Hale had a moderate limitation with respect to maintaining attention and concentration for extended periods and performing activities within a schedule.  (*Id.*)  Dr. Richardson further found Hale had moderate limitations relating to the ability to work in coordination with or in proximity to others without being distracted by them and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*)  Dr. Richardson further found moderate limitations with respect to interacting appropriately with the general public, ability to accept instructions and respond to criticism, the ability to get along with coworkers and peers, and the ability to maintain socially appropriate behavior.  (*Id.*)  Lastly, Dr. Richarson opined Hale had a moderate limitation to respond appropriately to changes in the work setting.  (*Id.*)

Despite these limitations, Dr. Richardson assessed that Hale maintained the ability to understand and remember simple and routine tasks, to carry out simple and routine tasks in a

work environment that does not require a fast pace, to interact with others on a superficial and occasional basis, and to respond to occasional changes in routine which are predictable and easily explained.  (*Id.* at 135-36.)  Accordingly, based in part on these conclusions, the consultants found Hale was not disabled at the initial review level.  (*Id.* at 138.)  The determination letter explained while the medical records "indicate that you do have severe physical and mental health conditions" and that these "conditions are making it difficult to work," Hale was "still capable of performing work that is less physically and mentally demanding."  (*Id.* at 180.)  That is, Hale's condition was "not severe enough to keep [him] from working."  (*Id.*)

Dr. Kristen Haskins reviewed Hale's claim at the reconsideration level.  (*Id.* at 151.)  Based on all the medical evidence, Dr. Haskins opined Hale's mental health record was consistent with a conclusion that there would be "some limitations in a work setting."  (*Id.* at 154.)  With respect to the Mental Residual Functional Capacity review, Dr. Haskins largely agreed with Dr. Richardson.  (*Id.* at 158.)  Dr. Haskins did, however, include additional limitations.  (*Id.*)  For instance, Dr. Richardson opined Hale had the ability to understand and remember simple and routine tasks, and Dr. Haskins opined Hale "maintains the ability to understand and remember simple and routine tasks. 1-3 steps."  (*Id.*)  Dr. Richardson also opined that Hale's work environment should not require a fast pace, but Dr. Haskins opined Hale should "work away from the distractions of others."  (*Id.*)  Upon reconsideration, the consultants reached the same conclusion as the initial review: Hale was not disabled.  (*Id.* at 161.)

  **C.** **July 2022 Application and Review**

On July 15, 2022, Hale applied to the Social Security Administration seeking a period of disability, disability insurance benefits, and Social Security income benefits.  (Doc. 6 at 78, 257,

259, 264.) He claimed he become disabled on September 1, 2018, and identified seven alleged disabling conditions: (1) severe ADHD; (2) chronic hemorrhoids; (3) Crohn's disease; (4) cubital tunnel; (5) knee problems; (6) anxiety; and (7) depression. (*Id.* at 303.) For the reasons described above, the SSA denied his application initially and upon reconsideration. (*Id.* at 138, 172.)

Hale requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 78.) On November 14, 2023, the ALJ held a hearing. (*Id.*) Hale was represented by counsel and testified. (*Id.* at 107.) A vocational expert also testified. (*Id.* at 117.) On December 19, 2023, the ALJ issued a written decision finding Hale was not disabled. (*Id.* at 78-96.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since September 1, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: depression, anxiety, attention deficit hyperactivity disorder (ADHD), disorders of the skeletal spine, cubital tunnel syndrome, disorders of the gastrointestinal system, hemolytic anemia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to vibration/vibratory tools, moving machinery, and unprotected heights. The claimant is able to engage in frequent handling and fingering with the right (dominant) hand with no restrictions on the left hand. He is able to understand and carry out at least simple tasks in a low stress job, defined as one with only occasional decision making or changes in the work setting required, that does not

> involve piece work, fast-moving assembly line-type work, or strict hourly production requirements. He is able to work in a job that requires no more than occasional interaction with the public, co-workers, and supervisors after a brief training period.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 23, 1978 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(*Id.* at 80-95.)  The ALJ explained:

> While the claimant certainly suffers from mental impairments that result in work-related limitations, I find that the claimant's allegations regarding the severity and limiting effects of his mental impairments cannot reasonably be accepted as consistent with the medical evidence and other evidence in the record.

(*Id.* at 91.)  The ALJ reviewed the medical evidence, highlighting that while Hale had symptoms relating to depression, anxiety, and ADHD, his treatment of those diagnoses showed improvement over time and exams often found his mood was stable and within normal limits. (*Id.*)  Moreover, the ALJ highlighted Hale denied needing reminders for memory problems, managed his own money, and could follow written instructions.  (*Id.*)  "[T]he record showed he went shopping, he worked part time and performed odd jobs, he worked on cars, he read, he did research, he went camping, he prepared meals, and he did laundry."  (*Id.* at 92.)

Lastly, with respect to the opinion evidence at the state agency review stage, the ALJ found the "opinions are mostly persuasive because they were highly consistent with the evidence that was available at the time they were completed." (*Id.* at 94.) Yet the ALJ did not adopt the limitations verbatim. (*Id.*) The ALJ explained:

> I did not adopt the limitations verbatim in order to put limits in more vocationally relevant terms. Further, the record did not support the claimant had to work away from the distractions of others as the claimant denied he had problems getting along with family, friends, and neighbors, he went to baseball games, he spent time with others, he had friends, and he went to stores. He denied he had problems getting along with others at work. Moreover, his exams often showed the claimant was cooperative, pleasant, and normal behavior. In addition, the record showed the claimant was often able to maintain attention and concentration.

(*Id.*)

Hale requested the Appeals Council review of the ALJ's decision. (*Id.* at 255, 369.) On November 26, 2024, the Appeals Council denied review and the Commissioner's decision became final. (*Id.* at 1.)

### D.     Federal Complaint

On January 14, 2025, Hale filed a Complaint in District Court challenging the Commissioner's final decision. (Doc. 1.) He asserted one assignment of error for review:

> The ALJ failed to identify substantial evidence supporting the RFC finding, excluded limitations from the opinions found persuasive without explanation, and failed to evaluate the medical opinions pursuant [to] the regulations.

(*Id.* at 959.) On September 8, 2025, the Magistrate Judge issued an R&R which recommended affirming the Commissioner's final decision that Hale was not disabled. (Doc. 11.) On September 21, 2025, Hale filed an objection to the R&R and raised the following objection:

> Whether the ALJ's RFC finding is unsupported by substantial evidence given the ALJ's legal errors relating to the evaluation of the evidence, including the prior administrative medical findings, and given the ALJ's failure to provide an accurate and logical bridge from the findings to the evidence in the record.

(Doc. 12 at 1013.) The Commissioner filed a one-page response stating it supported the findings of the R&R. (Doc. 13.)

## II. LAW AND ANALYSIS

### A. Standard of Review

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, 1994 U.S. App. LEXIS 35044, *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (flush language).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled. To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a

   combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant bears the burden of proof. *Walters*, 127 F.3d at 529. The "burden shifts to the Commissioner only at step five." *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). "The standard 'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Edwards v. Comm'r of*

*Soc. Sec.*, No. 23-5490, 2024 WL 2705000, 2024 U.S. App. LEXIS 3315, *2 (6th Cir. Feb. 12, 2024) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (citation omitted)). If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence. *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 WL 799749, 2000 U.S. App. LEXIS 24244, *1 (6th Cir. 2000) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

>    **B.**   **Hale's Objection to the R&R: Whether the ALJ's RFC finding is unsupported by substantial evidence given the ALJ's legal errors relating to the evaluation of the evidence, including the prior administrative medical findings, and given the ALJ's failure to provide an accurate and logical bridge from the findings to the evidence in the record.**

Hale's Objection challenges the ALJ's decision in two ways.  First, he argues the decision is not supported by substantial evidence.  The crux of this objection is his contention the ALJ credited Dr. Richardson's and Dr. Haskins' opinions yet improperly excluded limitations from those opinions without sufficient explanation.  (Doc. 12 at 1012.)  Second, he argues the ALJ did not apply the correct legal standard.  (*Id.*)  In this part of his Objection, Hale argues the ALJ improperly equated the ability to communicate with medical professionals with the ability to interact with individuals in a work environment.  (*Id.* at 1018.)  Hale additionally argues the ALJ cherry-picked the record by discussing only evidence that supported lesser limitations.  (*Id.* at 1019.)

1. **Substantial Evidence Supporting the ALJ's RFC Limitations**

"Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 13-cv-00260, 2014 WL 346287, 2014 U.S. Dist. LEXIS 11569, *25 (N.D. Ohio Jan. 30, 2014)). Instead, the question is whether "the ALJ's mental RFC determination was supported by substantial evidence in the record and is not inconsistent with either of the state agency psychologists' opinions." *Id.* This is so because "the ALJ, not a physician, is responsible for assessing a claimant's RFC." *Jordan v. Comm'r of Soc. Sec.*, No. 17-cv-2466, 2018 WL 5884830, 2018 U.S. Dist. LEXIS 192208, *30 (N.D. Ohio Nov. 9, 2018) (citing 20 C.F.R. § 404.1546 (c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)).

"While the ALJ is not required to defer to or incorporate every limitation from a Social Security medical expert or state agency consultant's opinion in formulating an RFC, the ALJ 'must explain why the opinion was not adopted.'" *Sharon P. v. Comm'r of Soc. Sec.*, No. 23-cv-3018, 2024 WL 3579114, 2024 U.S. Dist. LEXIS 134363, *19 (S.D. Ohio July 30, 2024) (quoting *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, 2024 U.S. App. LEXIS 12174, *8 (6th Cir. May 20, 2024)). The ALJ's decision must say enough "to allow the [] court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The consultants limited Hale's ability to interact with others to "a superficial and occasional basis." (Doc. 6 at 94.) The consultants also opined Hale "maintains the ability to understand and remember simple and routine tasks. 1-3 steps." The ALJ, however, removed

"superficial" and "1-3 steps" from the limitations.  Specifically, the ALJ found Hale "is able to understand and carry out at least simple tasks in a low stress job" and that he could "work in a job that requires no more than occasional interaction with the public, co-workers, and supervisors[.]"  (*Id.* at 84.)  With respect to these limitations, Hale argues the ALJ's decision fails to explain why the greater limitations were not adopted other than to state the language was not provided in vocational terms.  (Doc. 12 at 1014.)

The ALJ, however, did not reject the greater limitations based solely on the language not being provided in vocational terms.  Specifically, the ALJ found:

> The subsequently submitted evidence does not support a finding that the claimant has noticeably greater mental limitations than the ones outlined in these assessments. Nonetheless, I did not adopt the limitations verbatim in order to put limits in more vocationally relevant terms. **Further**, the record did not support the claimant had to work away from the distractions of others as the claimant denied he had problems getting along with family, friends, and neighbors, he went to baseball games, he spent time with others, he had friends, and he went to stores. He denied he had problems getting along with others at work. **Moreover**, his exams often showed the claimant was cooperative, pleasant, and normal behavior. **In addition**, the record showed the claimant was often able to maintain attention and concentration.

(Doc. 6 at 94 (emphasis added).)  Thus, in addition to the limitations not being in vocationally relevant terms, the ALJ cited specific evidence throughout the record to support the decision. The ALJ did not rely solely on vocational language changes in making his assessment.

Regardless, Hale argues the stated reasons do not sufficiently address the specific rejections of the greater limitations.  (Doc. 12 at 1014.)  For instance, he contends the ALJ never specifically discussed why he determined Hale was limited to "occasional interactions" as opposed to "superficial interactions."  (*Id.*)  And, to Hale, the ALJ never specifically discussed why he removed the "1-3 step limitation" in favor of the "simple tasks" limitation.  (*Id.*)  Hale cites cases which hold "the ALJ's decision itself, not after-the-fact arguments by the

Commissioner, must provide adequate and sufficient analysis to build an accurate and logical bridge between the evidence and the result." (*Id.* at 1015 (quoting *Curran v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-2696, 2022 WL 1609222, 2022 U.S. Dist. LEXIS 92678, *21 (N.D. Ohio Feb. 16, 2022).)

But as stated above, the ALJ explained his RFC differed from the consultants' limitations because of evidence in the record, including Hale "denied he had problems getting along with family, friends, and neighbors, he went to baseball games, he spent time with others, he had friends, and he went to stores." (Doc. 6 at 94.) He also "denied he had problems getting along with others at work." (*Id.*) And the record showed the claimant was often able to maintain attention and concentration. (*Id.*) These explanations sufficiently allow the Court to "trace the path of his reasoning" regardless of whether the ALJ specifically mentioned "superficial" interactions or "1-3 step" tasks. *Stacey*, 451 F. App'x at 519. Other cases involving situations where the ALJ omits a limitation a consultant recommended involve contradictions in the record. *See Kinney*, 2024 WL 2273365, 2024 U.S. App. LEXIS 12174, *8 (finding ALJ erred where ALJ recited limitations from consultant which they found "persuasive" but then omitted them in RFC without any explanation). That is not the case here. Instead, the ALJ's decision is supported by substantial evidence.

In another argument, Hale urges the provided explanations do not sufficiently address the differences in the limitations. (Doc. 12 at 1015.) To him, the record evidence cited by the ALJ only relates to "quantitative limitations" and do not address "qualitative limitations." (*Id.*) Here, Hale explains the evidence might equate to the ability to have interactions and the frequency of those interactions, by the explanations do not account for the quality of those interactions. (*Id.*) Accordingly, he argues the ALJ did not sufficiently explain why he dropped the "superficial"

limitation in favor of the less limited "occasional interaction." (*Id.*) Again, however, taking the ALJ's decision as a whole, the decision adequately explained it found the consultants opinions "mostly persuasive" and then cited reasons based on the record where the ALJ found the opinions unpersuasive, including Hale's ability to interact with others. This is not a case where an explanation was lacking in its entirety. *See Lindsey v. Comm'r of Soc. Sec.*, No. 18-cv-18, 2018 WL 6257432, 2018 U.S. Dist. LEXIS 203342, *14 (S.D. Ohio Nov. 30, 2018) (finding "that reversal is warranted because the ALJ assigned significant weight to the state-agency psychologists' opinions, which adopted the prior ALJ's mental limitations, but failed to include a limitation for 'superficial' interaction *or offer an adequate explanation for how the RFC he assessed accommodated that limitation*") (emphasis added). Instead, there is sufficient explanation in the ALJ's decision for the RFC, including the type of interactions Hale was limited to, both quantitatively and qualitatively.

Hale also argues the ALJ erred because he did not provide any rationale for finding he had greater abilities to interact with others during a training period than after. (Doc. 12 at 1016.) Courts reverse ALJ decisions when the ALJ fails "to provide an explanation for making a distinction in abilities before and after a training period." *Clampit v. Comm'r of Soc. Sec.*, No. 22-cv-1561, 2023 WL 2958158, 2023 U.S. Dist. LEXIS 67022, *15 (N.D. Ohio Mar. 30, 2023) (collecting cases). Those cases recognize "[n]othing forbids the ALJ from making a distinction before and after a training period." *Id.* at *16. But, as elsewhere, "the ALJ's opinion must 'permit this reviewing court to follow the reasoning and treatment of [medical] opinions.'" *Id.* (quoting *Davidson v. Comm'r of Soc. Sec.*, No. 16-cv-2794, 2018 WL 1453472, 2018 U.S. Dist. LEXIS 48387, *5 (N.D. Ohio Mar. 23, 2018)).

The ALJ's RFC determination explained Hale had the ability to work in a job that required some degree of interaction initially during a training period, but thereafter Hale should be in a job that required only occasional interaction. (Doc. 6. at 84, 92.) Hale argues this determination "defies logic" and the ALJ did not explain why he would have lesser limitations during a training period than after. (Doc. 12 at 1016-17.) To Hale, the opposite would make sense. (*Id.*) Hale misunderstands the thrust of the limitation. The ALJ's limitation explained after a brief training period, Hale would be able to work in a job with occasional interactions. That is, the initial training period, perhaps being more stressful, might be burdensome to Hale. But after, he would be able to continue in a role with occasional interactions.

The ALJ provided an explanation for this assessment: while Hale "did not like to be in large groups of people, he had social anxiety, and he did not get along with authority figures," he "denied he had problems getting along with family, friends, and neighbors, he went to baseball games, he spent time with others, he had friends, and he went to stores" and "denied he had problems getting along with others at work." (*Id.*) The ALJ explained: "Based on the above evidence and moderate limitation in interact with others, the claimant could occasionally interact with supervisors, co-workers, and the public after a brief training period." (*Id.*) That explanation squarely differentiates this case from the ones cited by Hale. *See Clampit*, 2023 WL 2958158, 2023 U.S. Dist. LEXIS 67022, *15 (ALJ provided no reasoning at all for creating a distinction in ability to interact during and after training period); *Davidson v. Comm'r of Soc. Sec.*, No. 16-cv-2794, 2018 WL 1453472, 2018 U.S. Dist. LEXIS 48387, *5 (N.D. Ohio Mar. 23, 2018) (reversing decision where ALJ afforded "great weight" to consultant's "entire opinion" but provided no explanation for omitting limitations). Accordingly, the ALJ sufficiently explained his decision not to adopt the limitation as stated by the consultants.

### 2. Legal Errors

In addition to the arguments above, Hale asserts the ALJ erred in omitting a limitation which would require him to work away from the distraction of others. (Doc. 12 at 1017.) The consultants opined Hale had to work away from the distractions of others. (Doc. 6 at 94.) Yet the ALJ did not adopt this opinion. (*Id.*) Instead, the ALJ found "the record did not support the claimant had to work away from the distractions of others as the claimant denied he had problems getting along with family, friends, and neighbors, he went to baseball games, he spent time with others, he had friends, and he went to stores." (*Id.*) Further, the ALJ cited that Hale "denied he had problems getting along with others at work" and "his exams often showed the claimant was cooperative, pleasant, and normal behavior." (*Id.*) Lastly, "the record showed the claimant was often able to maintain attention and concentration." (*Id.*)

In his Objection, Hale makes two arguments regarding this specific limitation. (Doc. 12 at 1018.) First, he argues the ALJ cherry-picked the record to focus only on evidence which supported rejecting the limitation while ignoring evidence that supported the limitation. (*Id.*) An allegation of cherry-picking the record "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). As the Sixth Circuit explained, "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). But in the context of this case, the Court "does not review the evidence *de novo*, make credibility determinations, or weigh the evidence." *Minrod v. Kijakazi*, No. 20-cv-678, 2021 WL 4291224, 2021 U.S. Dist. LEXIS 179806, *16 (N.D. Ohio Sept. 21, 2021) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). Here, there is no evidence of cherry-picking. The ALJ's decision reflects Hale's testimony, the consultants' opinions, and the

complete medical record. The decision does not single out only record evidence which supports rejecting the limitation. Instead, considering the decision as a whole, it reflects the weighing of all the evidence in the record.

Second, Hale argues the ALJ was not legally permitted to presume his ability to interact with friends and medical professionals equates to the ability to be around others in a work environment. (Doc. 12 at 1018.) Hales cites cases which he argues supports this conclusion and that the ALJ impermissibly made this error. (*Id.* (citing *Sharon P. v. Comm'r of Soc. Sec.*, No. 23-cv-3018, 2024 WL 3579114, 2024 U.S. Dist. LEXIS 134363 (S.D. Ohio July 30, 2024); *Heatherly v. Comm'r of Soc. Sec.*, No. 23-cv-2456, 2024 WL 4181711, 2024 U.S. Dist. LEXIS 164044 (N.D. Ohio Sept. 12, 2024); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).)

Hale overstates the cited case law. For instance, in *Sharon P.*, the court recognized that "courts have 'cautioned against the use of a claimant's interactions with healthcare providers when assessing the capability to interact appropriately with coworkers and supervisors.'" 2024 WL 3579114, 2024 U.S. Dist. LEXIS 134363, *21. But there, the ALJ merely focused on interactions with medical professions and found it could not find a logical bridge between the rejection of the limitations based on those interactions alone. *Id.* (the court is "unable to discern from the ALJ's decision how plaintiff's ability to interact with her medical providers is on par with interacting with coworkers and supervisors in a work setting on a sustained basis"). And in *Heatherly*, which cites *Miller* and *Gayheart*, the court explained "[a]lthough an ALJ may properly consider a claimant's household and social activities when evaluating a claimant's assertion of pain or ailments, the ALJ must establish that the claimant could have performed such activities on a 'sustained basis' when assessing a claimant's mental impairments." 2024 WL

4181711, 2024 U.S. Dist. LEXIS 164044, *45-46.  Neither case holds an ALJ is legally unpermitted to consider Hale's interactions with friends and medical professions and consider those interactions when determining potential limitations in a work environment.  Instead, it can be relevant evidence.  And, in any event, the evidence the ALJ explained here was not related to just interactions with medical professionals and social activities: here the ALJ explained Hale "denied had had problems getting along with others at work."  (Doc. 6 at 889.)  Considering the entirety of the record, the ALJ's decision is supported by substantial evidence and the ALJ did not commit any legal errors.

### III. CONCLUSION

For the reasons above, Plaintiff Joshua Todd Hale's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner of Social Security is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 12, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE